**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **COURTLAND BISHOP, et. al.,** | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. 06-CV-404** |
| | : | |
| **v.** | : | |
| | : | **JUDGE MARBLEY** |
| **OAKSTONE ACADEMY, et al.,** | : | |
| | : | **Magistrate Judge King** |
| **Defendants.** | | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss Counts I, II, III, V, VI, and VII of Plaintiffs' Amended Complaint. Defendants Oakstone Academy ("Oakstone"), the Ohio State University Children's Center for Developmental Enrichment ("CCDE"), CCDE Therapies, Rebecca Morrison ("Morrison"), Galen Stover, Douglas Brown, Elliot Brody, Esther Brody, James Martin, Edward Snodgrass, and Jenny Stover (collectively "Defendants") move this Court to dismiss Counts I, II, III, V, VI, and VII of Plaintiffs' Amended Complaint pursuant to Fed.R.Civ.Pro. 12(b) for failure to state claims upon which relief can be granted, or, in the alternative, for failure to join an indispensable party. In a separate motion, Defendant the Ohio Department of Education moved for summary judgment on the final remaining count (Count IV) of the Amended Complaint.

For the reasons stated herein, Defendants' Motion to Dismiss Counts I, II, III, V, VI, and VII of Plaintiffs' Amended Complaint is **GRANTED in part** and **DENIED in part**.

### II. FACTS

1

Worthington School District ("Worthington") placed C.B. ("Minor Plaintiff") at Oakstone after he was identified as a child with disabilities under the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. §1400 *et seq.*, in 2002.  At the time of his placement, Minor Plaintiff was three years old.  Minor Plaintiff's parents placed his non-disabled twin brother at Oakstone to serve as a peer model.  During Minor Plaintiff's time at Oakstone, Worthington payed for his tuition.

Defendant CCDE is a private, non-profit organization that is organized under Ohio law for charitable and educational purposes.  Oakstone is a name registered by CCDE which describes the portion of CCDE's business which operates a private school.[1]  Oakstone's purpose is to "provide services for enhancing the lives if children with Autism Spectrum Disorder and their families."[2]

Minor Plaintiff attended Oakstone from 2002 until 2005.  On or about April 26, 2005, C.B. was diagnosed with a form of autism, and CCDE prepared an Individualized Education Plan ("IEP") to address his educational needs.  Agents of CCDE, Worthington, and Minor Plaintiff's parents all signed the IEP.  C.B.'s parents also received a copy of the "parent notice of procedural safeguards."

Oakstone provided educational services to C.B. pursuant to the IEP until on or about August 25, 2005, when Oakstone allegedly expelled C.B. after his mother "questioned" his classroom assignment.  Minor Plaintiff's parents later withdrew C.B.'s brother from Oakstone.

---

[1]Ohio Secretary of State Number 13344440 (Document Number 20022500812)

[2]Articles of Incorporation of CCDE, Ohio Secretary of State Number 1079920 (Document Number 199914702680)

On October 25, 2005 Plaintiffs filed a Complaint Notice and Request for Due Process Hearing with the ODE.  Plaintiff alleges that all notices regarding the hearing indicated that the only parties to the hearing would be Plaintiffs and Worthington.  Prior to the hearing, Plaintiffs withdrew this complaint and hearing request.  Instead, Plaintiffs Courtland and Michelle Bishop, individually and as next friends of Minor Plaintiff, filed this action.

Plaintiffs claim that, as a result of Minor Plaintiff's alleged expulsion from Oakstone, Defendants: 1) violated Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §504; 2) violated the Americans with Disabilities Act, 42 U.S.C. §12131 ("ADA"); 3) denied C.B. a free and appropriate public education under the Individuals with Disabilities Act, 20 U.S.C. §1400 *et seq.* ("IDEA") and ; 4) denied Plaintiffs due process in violation of 42 U.S.C. §1983.  Plaintiffs also claim that Defendants are liable for breach of contract and tortious interference with contract.  Plaintiffs further claim that C.B. suffered academic, social and sensory regression, emotional distress, economic and emotional damages and loss of parental and filial consortium entitling Plaintiffs to compensatory and punitive damages.

All Defendants, except the ODE, have moved to dismiss the relevant counts of the Amended Complaint

### III. STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, this Court is limited to evaluating whether a plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action.  *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983).  A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Lillard v.*

3

*Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996) (quoting *Conley v. Gibson*, 355

U.S. 41, 45-46 (1957)). This Court must "construe the complaint liberally in the plaintiff's favor

and accept as true all factual allegations and permissible inferences therein." *Conley*, 355 U.S. at

45-46. While the complaint need not specify every detail of a plaintiff's claim, it must give the

defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests."

*Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). While liberal, this standard of

review does require more than the bare assertion of legal conclusions. *Allard v. Weitzman* (*In re*

*DeLorean Motor Co.*), 991 F.2d 1236, 1240 (6th Cir. 1993). A complaint must contain either

direct or inferential allegations with respect to all the material elements necessary to sustain a

recovery under some viable legal theory. *Scheid v. Fanny Candy Shop Inc.* 859 F.2d 434, 437

(6th Cir. 1988).

## IV. LAW and ANALYSIS

### A. Counts I, II, and III

In Count I of the Amended Complaint, Plaintiffs seek to recover under §504 of the

Rehabilitation Act of 1973 and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181 *et*

*seq*.[3]

In Count II of the Amended Complaint, Plaintiffs allege that Defendants abridged his due

process rights in violation of 42 U.S.C. §1983.

In Count III of the Amended Complaint, Plaintiffs allege that Defendants violated the

Individuals with Disabilities Act (IDEA), 20 U.S.C. § 1400 *et seq*.

---

[3]In general, these acts prevent discrimination on the basis of disability in employment,
programs and services provided by state and local governments.

All three of these complaints arise from Defendants alleged violation of the terms of the IEP and subsequent expulsion of the Minor Plaintiff in an around August 25, 2005.

Defendants move to dismiss Counts I, II, and II of the Amended Complaint because, among other reasons, Plaintiffs failed to exhaust their administrative remedies before filing this action.

It is well settled that a plaintiff must exhaust administrative remedies before bringing suit to obtain relief that is available under the IDEA.  20 U.S.C. §1415(1); *Doe v. Smith*, 879 F.2d 1340, 1343 (6th Cir. 1989); *Crocker v. Tennessee Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir. 1989).   The IDEA specifically provides for a due process hearing and a subsequent appeal at the state agency level.  20 U.S.C. §1415(f),(g).[4]

Moreover, Plaintiff may not avoid the exhaustion requirement of the IDEA by also stating claims under the Rehabilitation Act, ADA, or bringing suit for money damages under 42 U.S.C. §1983 if the Plaintiff's claims are also actionable under the IDEA. *Cordrey v. Exkert,* 917 F.3d, 1460, 1475-76 (6th Cir. 1990); *J.S. v. Attica Cent. Schs.*, 386 F.3d 107, 122 (2d Cir. 2004) (holding that the plaintiff's "claims under § 504 of Rehabilitation Act and § 1983, both of which sought to ensure free appropriate public education that was also available under IDEA, were

---

[4]20 U.S.C. §1415(f)(1)(A) provides that: "whenever a complaint has been received under subsection (b)(6) or (k) of this section, the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency."

20 U.S.C. §1415(g)(1) state: "If the hearing required by subsection (f) of this section is conducted by a local educational agency, any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State educational agency."

both subject to IDEA exhaustion requirement"); *Covington v. Knox Sch. Sys.*, 205 F.3d 912, 916 (6th Cir. 2000).

The law prohibits Plaintiffs from proceeding with Counts I, II, and III of their Amended Complaint unless they have first exhausted their administrative remedies.  Plaintiffs withdrew their request for a due process hearing and pursued no other administrative remedies before bringing this action.  Thus, Plaintiffs failed to exhaust their administrative remedies as the IDEA requires.

Plaintiffs do not dispute that the IDEA requires that they exhaust their administrative remedies before they seek redress in this Court.  Nor do they dispute that they failed to exhaust these remedies.  Rather, they assert that pursuing their administrative remedies would have been futile, and as such, the IDEA's exhaustion requirement should be waived.

Exhausting administrative remedies is not required if such efforts would be futile or inadequate to protect a plaintiff's rights.  *Honig v. Doe*, 484 U.S. 305 (1988); *Covington*, 205 F.3d at 917.  The burden of establishing the futility or inadequacy of the administrative remedies rests on the party seeking to bypass them.  *Honig*, 484 U.S. at 327.  Mere speculation at the futility or procedural deficiencies of a proposed administrative proceeding is not enough to satisfy this burden.  *M.T.V. v. Dekalb County Sch. Dist.*, 446 F.3d 1153, 1159 (11th Cir. 2006).

Plaintiffs claim that the due process hearing would have been futile because it would not have provided any remedies in regard to Plaintiffs' claims against Oakstone Academy, which was not a party to the hearing.[5]

---

[5]Although, when Plaintiffs pulled out of the administrative process, they did not state that they were doing so because Oakstone Academy was not a party.  Rather, they cited "unforeseen medical issues" and reserved their right to refile within the statute of limitations.

Plaintiffs fail to show how the absence of Oakstone Academy from the due process hearing would render the administrative process futile.  In his petition for a due process hearing, Minor Plaintiff requested placement in a pre-kindergarten class at Oakstone Academy or placement in a half-day class at Worthington with specialized therapy, an additional aide to be provided to assist Minor Plaintiff in his transition to his new placement, and remedial services until a placement was made.  In summary, Minor Plaintiff requested that Worthington take specific actions such that he would receive what he felt was a free and appropriate public education under his IEP.

Plaintiffs fail to show how the absence of Oakstone Academy from the due process hearing would preclude Minor Plaintiff from obtaining this exact relief.[6]  One of Plaintiff's requested alternatives was to have Minor Plaintiff placed a half day program at Worthington; Oakstone Academy need not have been a party to the administrative hearing for Worthington to have fulfilled this request.  Moreover, in an IDEA action, a plaintiff's remedy is against the local school district who made the placement, not against the private school itself.  *Ullmo v. Glmour Academy*, 273 F.3d. 671, 679 (6th Cir. 2001).  A private school that receives federal funds for "general education purposes, as opposed to funds provided under the IDEA for disability education" cannot be sued under the IDEA.  *Id.*   In this case, Plaintiffs do not assert that Oakstone Academy received federal funds specifically for disability education.  As such, Plaintiff cannot sustain a claim under the IDEA against Oakstone Academy.  The Court recognizes, however, that allowing private institutions to escape liability under the IDEA simply

---

[6]Nor is there any evidence on the record that shows that Plaintiffs even requested that Oakstone Academy be made a party to the hearing before they instituted this action.

7

because they are not public entities gives less protections to students with disabilities. These students, however, may redress their grievances with private schools by filing either contracts claims or claims under 42 U.S.C. § 1983.

Plaintiffs do not establish how the absence of Oakstone Academy from the administrative hearing prevents them from obtaining the relief they requested. In fact, it was Worthington who placed Minor Plaintiff at Oakstone Academy in the first place. A Hearing Officer has broad discretion in granting relief at a due process hearing. Nothing in the record illustrates how a Hearing Officer would be prevented from granting Plaintiffs the requested relief. While Oakstone Academy is not an actionable party under the IDEA, given its contractual relationship with Worthington, it is possible, if not plausible, for the Hearing Officer to fashion a remedy that involves Minor Plaintiff's renewed placement at Oakstone Academy. Plaintiffs mere conclusory argument to the contrary cannot exempt them from the exhaustion requirements of the IDEA. Moreover, the relief that the law deems appropriate is not necessarily the type of relief that the grievant requests: "a statutory exhaustion requirement means that a party must exhaust all available avenues of administrative review regardless of whether the administrative process offers the particular type of relief that is being sought." *Frazier v. Fairhaven Sch. Committee*, 276 F.3d 52, 62 (1st Cir. 2002).

Plaintiffs' reliance on *Covington v. Knox Sch. Sys.*, 205 F.3d 912 (6th Cir. 2000) is misplaced. In *Covington*, the court found that it would be futile for a plaintiff to exhaust administrative remedies before bringing a claim under 42 U.S.C. §1983 because he had already graduated and therefore the "condition creating the damages ha[d] ceased." *Covington*, 205 F.3d at 918. In this case, Plaintiff is six years old and has not graduated. Moreover, the condition

8

creating the purported damage, the alleged misapplication of the IEP, has not ceased.  Simply put, *Covington* is not factually analogous to this case.

Plaintiffs further argue that they should be exempted from the exhaustion requirement of the IDEA because exhausting their administrative remedies would further deprive Minor Plaintiff of his right to an education.  Section 1415(j) of the IDEA contains a "stay-put provision."  This provision provides that during the pendency of any proceeding under the IDEA, "the child shall remain in the then current educational placement."  *Honig*, 484 U.S. at 323 citing 20 U.S.C. § 1415(e)(3).[7]  Minor Plaintiff argues that this stay-put provision puts him in a "Catch-22."  Specifically, he alleges that the stay-put provision envisions that Minor Plaintiff stay at Oakstone Academy.  He further alleges that the absence of Oakstone Academy from the due process proceedings forced him to choose between having no educational placement during the proceedings, or dropping his due process request and pursuing educational placement elsewhere.

In making this argument, Plaintiffs fails to cite precedent supporting their position and misinterprets the intent of the stay-put provision.  Congress designed the stay-put provision to prevent school systems from excluding disabled children during the pendency of administrative proceedings, not vice versa.  *See Honig*, 484 U.S. at 324-25.  Nothing in the language of the IDEA prevents Minor Plaintiff from obtaining alternate placement during the pendency of administrative hearings.  Moreover, if Worthington or Oakstone Academy did in fact preclude Minor Plaintiff from attending Oakstone Academy during the short window between his alleged expulsion and the scheduled due process hearing, he could have requested injunctive relief from

_____

[7]*Honig* was decided in 1988;  the current stay-put provision is in 20 U.S.C. § 1415(j).

9

the court ordering Oakstone Academy to continue to educate him.  As such, Plaintiffs' "Catch-22" argument does not exempt them from the exhaustion requirement of the IDEA.

Lastly, Plaintiffs argue, without citing any authority, that since they are seeking "structural, systemic" reform, they are not required to exhaust their administrative remedies under the IDEA.   In *J.S. v. Attica Cent. Schs.*, 386 F.3d 107, 113 (2d Cir. 2004), the court reviewed several cases in which the court held that it was proper to excuse "exhaustion of administrative remedies in cases that include allegations of systemic violations."  Each case, however, involved allegations of systemic violations of the IDEA or structural concerns with the educational system.  This case involves neither.  Plaintiffs are suing Defendants because of a particularized concern regarding the alleged mishandling of Minor Plaintiff's individualized IEP, not because of some systemic or structural concern with the education of handicapped children in the state.  Plaintiffs request relief that is specific to Minor Plaintiff and not consistent with Plaintiffs' assertion that they are seeking systemic reform.  Hence, Plaintiffs' argument that they should be exempted from the IDEA's exhaustion requirement because they are seeking structural reform fails.

Exhaustion of administrative remedies "allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children."  *Attica*, 386 F.3d at 112.  Thus, it is a very important requirement of the IDEA.  Plaintiffs failed to exhaust their administrative remedies.  Additionally, Plaintiffs have failed to delineate any persuasive reasons why they should be

exempted from this requirement.      Therefore, this Court **GRANTS** Defendants' Motion to

Dismiss as to Counts I, II, and II of the Amended Complaint.  The Court notes, however, that

Plainitffs may refile for a due process hearing within the applicable statute of limitations.

### B. Count V

In Count V, Plaintiffs assert that Defendants CCDE and Oakstone breached a contract for

provision of Minor Plaintiff's education for a one-year period commencing on April 26, 2005.

In exercising supplemental jurisdiction over a state law breach of contract claim, this

Court must decide this claim applying Ohio law.  *United Mine Workers of America v. Gibbs*, 383

U.S. 715, 725 (1933).  Under Ohio law:

> Essential elements of a contract include an offer, acceptance, contractual
> capacity, consideration (the bargained for legal benefit and/or detriment), a
> manifestation of mutual assent and legality of object and of consideration.
> A meeting of the minds as to the essential terms of the contract is a
> requirement to enforcing the contract.

*Kostelnik v. Helper*, 96 Ohio St. 3d 1, 4 (2002) (citations omitted).

Plaintiffs allege that Minor Plaintiff was a third party beneficiary of a contract between

Worthington and Oakstone.  Plaintiffs assert that the IEP constituted an offer by Oakstone to

provide the described educational services to Minor Plaintiff for one year.  Plainitffs further

contend that Worthington accepted this offer by signing the IEP and paying tuition on Minor

Plainitiff's behalf to Oakstone.  Plaintiffs claim that Minor Plaintiff's continued enrollment at

Oakstone combined with the payment of tuition to Oakstone indicates a manifestation of mutual

assent by the parties.  Lastly, Plaintiffs claim that the tuition paid by Worthington to Oakstone

constitutes consideration for the alleged contract.

Defendants argue that the IEP does not constiue an offer.  Rather, they contend that the IEP is a plan that sets out the specific ways in which a child with disabilities will be provided with a free and appropriate public education.  *Deal v. Hamilton County Board of Education*, 392 F.3d 840, 853 (6th Cir. 2004) ("School districts receiving funds under the IDEA are required to establish an IEP for each child with a disability." (citations omitted)).  The IEP must "contain a specific statement of the child's current performance levels, the child's short-term and long-term goals, the educational and other services to be provided, and criteria for evaluating the child's progress.") (Marbley,  J.); 20 U.S.C. §1401(14) ("The term ... "IEP" means a written statement for each child with a disability that is developed, reviewed, and revised in accordance with section 1414(d) of this title.")

While all of Defendants' assertions are true, the facts that they state do not preclude the IEP from also being an offer.  Worthington had an obligation to provide Minor Plaintiff with a free and appropriate public education.  Worthington choose to have Oakstone provide those services to Minor Plaintiff.  The IEP outlined the services that Oakstone was to provide to Minor Plaintiff for a one-year term commencing in April 2006.  For the purposes of a motion to dismiss, Plainitffs have properly alleged that the IEP constituted an offer.  Moreover, the signatures of Worthington could indicate that Worthington accepted the terms of the IEP.

Defendants also assert that the alleged contract does not contain consideration.  Specifically, they claim that Worthington's "continued" payment of tuition to Oakstone cannot be part of the alleged contract because it is barred by the parole evidence rule.  The parole evidence rules states that absent an invalidating cause, the "parties' final written integration of their agreement may not be varied, contradicted, or supplemented by evidence of prior or

contemporaneous oral agreements, or prior written agreements." *Galmish v. Ciechini*, 90 Ohio St. 3d 22, 27 (2000).  Defendants contend that since Worthington reached an "agreement" to pay tuition on behalf of Minor Plaintiff to Oakstone in 2002, the parol evidence rule bars this "prior agreement" from becoming part of the alleged 2005 contract.

Defendants are incorrect.  While it is true that Worthington had been paying Oakstone tuition on behalf of Minor Plaintiff for three years prior to the implementation of the IEP, this does not preclude the tuition for the year subsequent to the IEP from being consideration for Oakstone complying with the terms of the IEP.  Moreover, the IEP is not necessarily a complete integration of Worthington and Oakstone's agreement.   From the language IEP, it is clear that Worthington intended that Oakstone comply with its terms.  The IEP called for Minor Plaintiff's continued placement at Oakstone.  Obviously, Oakstone expected to receive payment for the services it provided to Minor Plaintiff.  The fact that Worthington had previously paid Oakstone tuition does not preclude Worthington from making the payment of tuition contingent upon Oakstone meeting the requirements of the IEP.  "The principal purpose of the parol evidence rule is to protect the integrity of written contracts." *Id.*  Incorporating the payment of tuition into the alleged contract by inference from past agreements and by inference from the fact that tuition was actually paid to Oakstone does not violate this purpose.

Defendants further contend that this tuition cannot be consideration because the IEP is a plan that calls for a *free* and appropriate public education.  Defendants do not expound upon this argument.  The alleged contract in this case is between Worthington and Oakstone.  Oakstone is not providing its services for free.  The tuition Worthington pays can constitute consideration for this contract.  The fact that Plainitiffs, by law, do not have to pay for this education, does not

prohibit the tuition from being consideration.  Minor Plainitiff is a third-party beneficiary to the alleged contract because he was the person the IEP anticipated receiving the benefit of Oakstone's services.   It is well established that a third-party beneficiary may bring suit to enforce a contract even though he did not provide consideration himself.  *See Grant Thornton v. Windsor House, Inc.*, 57 Ohio St. 3d 158, 161 (1991).

Defendants contend that even if this Court finds that Plaintiffs established that there is a contract, it is unenforceable.  Specifically, Defendants contend that, by law, Worthington is prohibited from contracting away its obligation to provide Minor Plaintiff with a free and appropriate public education.  It is settled that the contracts clause does not have the effect of overriding the power of the State to establish all the regulations that are reasonably necessary to secure the health, safety, and general welfare of the community; "this power can neither be abdicated nor bargained away."  *Atlantic Coast Line R. Co. v. City of Goldsboro*, 232 U.S. 548, 558 (1914).  Defendants assert that providing a free and appropriate public education is part of securing the general welfare of the community and, as such, Worthington is not allowed to contract away its obligation to do so.  Thus, Defendants claim that the alleged contract must be unenforceable.

Even assuming that Defendants' contentions are correct, their argument still fails. Sections 1412(b)(1)(B)(i)&(ii) of the Individuals with Disabilities Education Improvement Act ("IDEIA") specifically state that the government may place children with disabilities in private schools that are better equipped to provide them with an appropriate education.[8]  Moreover,

---

[8](i) In general: Children with disabilities in private schools and facilities are provided special education and related services, in accordance with an individualized education program, at no cost to their parents, if such children are placed in, or referred to, such schools or facilities

14

these sections provide that these children are to receive their education pursuant to an IEP. Additionally, these sections contemplate continued governmental oversight of a private schools' provision of education to disabled students.

Thus, Worthington did not abdicate or bargain away its obligation to provide Minor Plaintiff with a free and appropriate education. Rather, it allegedly contracted with Oakstone, a facility better equipped to deal with Minor Plaintiff's autism, as allowed by the IDEIA. In doing so, Worthington did not relieve itself of the obligations to monitor Oakstone for compliance with state-set educational standards or to ensure that Oakstone is meeting the requirements of the IEP.

A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." It is possible that the IEP constituted an offer, that Worthington accepted the offer, and that the tuition paid by Worthington to Oakstone was consideration. Whether Plaintiff can prove these allegations is a matter properly reserved for trial or summary judgment. As such, Defendants motion to dismiss Count V is **DENIED**.

---

by the State or appropriate local educational agency as the means of carrying out the requirements of this subchapter or any other applicable law requiring the provision of special education and related services to all children with disabilities within such State.

(ii) Standards: In all cases described in clause (i), the State educational agency shall determine whether such schools and facilities meet standards that apply to State educational agencies and local educational agencies and that children so served have all the rights the children would have if served by such agencies.

## C.  Count VI

In Count VI, Plaintiffs allege that Defendant Morrison tortiously interfered with the

aforementioned contract between Worthington and Oakstone.

In order to state a claim for tortious interference with contract, Plainitffs must show: 1)

the existence of a contract; 2) the wrongdoer's knowledge of the contract, 3) the wrongdoer's

intentional procurement of breach, 4) lack of justification, and 5) resulting damages.  *Fred Siegel*

*Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171.

Defendants claim that Plainitffs fail to allege facts establishing the existence of a contact,

thus violating the first prong of the *Siegel* requirements.   For the reasons analyzed above, this

Court found that Plaintiffs stated a claim upon which relief could be granted for breach of

contract.

Defendants further allege that Count VI should be dismissed because Defendant

Morrison cannot be held personally liable.  Ohio Revised Code §1702.55(A) provides:  "The

members, directors, and the officers of a corporation shall not be personally liable for any

obligation of the corporation."

Defendant Morrison is the Chief Executive Officer of CCDE.  Thus, to the extent that

Defendants are seeking relief from Defendant Morrison in her capacity as an agent for CCDE,

ORC §1702.55(A) requires that claims against Morrison be dismissed.  Plaintiffs, however, do

not allege, for the purposes of Count VI, that Defendant Morrison was acting on behalf of

CCDE.[9]  Rather, they appear to allege that Defendant Morrison acted personally in interfering

---

[9] Paragraph 40 of Plaintiffs' amended complaint reads "That Defendant, Rebecca
Morrison, as Chief Executive Officer of CCDE and as a signator of the minor plaintiff's April 29,
2005 IEP, was fully aware of the existence of a contract to provide educational services to the

16

with the alleged contract.  As such, ORC §1702.55(A) is inapplicable.  Thus, if at trial, the Court were to find that Morrison acted in a personal capacity and not in her capacity as an agent or director of CCDE when she allegedly interfered with the contract, she could be found liable for tortious interference with contract.

Finally, in their reply brief, Defendants assert that since Defendant Morrison was a party to the alleged contract, she is not legally capable of tortiously interfering with it.  They also allege that Plaintiffs failed to plead facts showing that Morrison lacked justification in interfering with the alleged contract.  While these arguments appear well-founded, it is well established that a moving party may not raise new issues for the first time in its reply brief.  *See, e.g., In re: Firstenergy Corp. Sec. Litig.*, 316 F.Supp.2d 581, 599 (6th Cir. 2004); *Curciuo Webb LLC v. Nat'l Benefits Program Agency*, 367 F.Supp. 2d 1191, 1207 n.28 (S.D. Ohio 2005).  Because Defendants did not raise these arguments until their reply, the Court will not hear them at this time.

For the aforementioned reasons, Defendants' motion to dismiss Count VI is **DENIED**.

### D.  Count VII

In Count VII, Plaintiffs assert that the Board of Directors of CCDE, and each director individually, is liable under each of the previous six causes of action.

---

minor plaintiff and its terms and conditions as memorialized by said IEP. As CEO and Director, she had a duty to ensure that said contract was not breached by any agent or employee of CCDE, including herself." This paragraph does not say she was acting as a representative when she allegedly interfered with the purported contract.  Rather, it states that, based on her position, Defendant Morrison should have been aware of the contract.  Thus, the next paragraph can plausibly be read by the Court as an assertion that Defendant Morrison acted as a private individual when she allegedly interfered with the IEP.

17

As noted above Ohio Revised Code §1702.55(A) provides: "The members, directors, and the officers of a corporation shall not be personally liable for any obligation of the corporation."

With the exception of Morrison, Plaintiffs do not allege that any of the Board Members acted except through the corporation.  As such, ORC §1702.55(A) applies, and the Board Members cannot be held personally liable in this action.  Therefore, Defendants' motion to dismiss Count VII is **GRANTED**.

### E.  Loss of Filial Consortium and Loss of Parental Consortium

Based on the foregoing reasoning, the only claims that now remain are Counts V, a breach of contract claim against CCDE, and Count VII, a tortious interference claim against Morrison.

In Counts V and VII, Plaintiffs seek various types of damages, including but not limited to damages for loss of filial consortium and loss of parental consortium.

Defendants allege that Plaintiffs are not entitled to damages for loss of filial or parental consortium.  The Ohio Supreme Court has held that a parent may recover damages for loss of a filial consortium upon a showing that Defendant tortiously caused physical injury to the parent's minor child.  *See Gallimore v. Children's Hosp. Med. Ctr.*, 67 Ohio St.3d 244, 251 (1993).   In order to state a claim for loss of filial consoritum, a plaintiff must allege physical injury to their child in the complaint.  *Doe v. Archdiocese of Cincinnati*, 167 Ohio App.3d 488, 497 (2006).

In their Amended Complaint, Plaintiffs allege Minor Plaintiff suffered "sensory, scoial, and academic regression" as a result of his alleged expulsion.   Plaintiffs contend that "sensory regression" is a neurological injury that constitutes a physical injury such that Plaintiffs are able sustain their claim for loss of filial consortium.

18

Defendants do not cite any precedent or facts which indicate that sensory regression does not have any physical effects. A child with autism, cut off from his normal education and routine and forced into an educational setting not suited to his particular disabilities, could suffer sensory regression that manifests itself with physical symptoms. As such, it would be improper to dimiss Plaintiffs' claim for damages for loss of filial consortium at this juncture. Plaintiffs still bear the burden of proving that Minor Plaintiff's alleged sensory regression had physical manifestations at trial.

The Ohio Supreme Court has also ruled that "the essence of a parental-consortium claim is that a child is compensated for a harm done or for losses suffered as a result of the injury to the parent." *Rolf v. Tri State Motor Transit Co.*, 91 Ohio St.3d 380, 382 (2001) (citations omitted). Under Ohio law, "a minor child has a cause of action for loss of parental consortium against a third-party tortfeasor who negligently or intentionally causes physical injury to the child's parent." *Gallimore*, 67 Ohio St.3d at 1052. In their Amended Complaint, Plainitffs do not allege any physical injury to the Minor Plaintiff's parents. As such, Plaintiff cannot recover damages for loss of parental consortium.

### F.  Failure to Join an Indispensable Party

Defendants assert that the entire Amended Complaint should be dismissed because Worthington has not been made a party to this action. In support of this contention, Defendants correctly state that obligations under the IDEA and responsibility for compliance with an IEP both remain with the State even though the child is placed at a private school. *See Ullmo v. Gilmour Academy*, 273 F.3d 671, 679 (6th Cir. 2001); 34 C.F.R. 300.349(c). Without further argument, Defendants assert that because Worthington is not a party to this action, Fed. R. Civ.

19

Pro. 19(b) requires that this Court dismiss the Amended Complaint for failure to join an indispensable party.

Fed. R. Civ. Pro. 19 requires mandatary joinder when an absent party claims an interest which cannot be protected without joinder or when the absence of this party subjects a current party to a substantial risk of incurring multiple or inconsistent obligations.  In their motion, Defendants have failed to indicate how the absence of Worthington would cause either of these effects.  Moreover, Defendants' contention that Worthington is a necessary party to adjudicate the IDEA claims is now moot because this Court has dismissed those counts of the Amended Complaint.

The only counts still pending include breach of contract and tortious interference with contract, which Plaintiffs assert against Oakstone and Morrison, respectively.  Plaintiffs have accused both parties of violating Plaintiffs' rights as third-party beneficiaries to an alleged contract between Worthington and Oakstone.  Other than a vague reference in the complaint to Worthington's duty to provide a free and appropriate public education to Minor Plaintiff, Defendants have articulated no theory under which Worthington could be found liable. Plaintiffs' contract claim is solely against Oakstone.  Furthermore, Defendants have not indicated how Worthington's absence would cause them to suffer multiple or inconsistent obligations.  As such, Defendants' motion to dimiss the Amended Complaint for failure to join an indispensable party is **DENIED**.

### V. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**.  Counts I, II, III, and VII are dismissed.  Count IV has been dismissed in an

20

accompanying proceeding.  Any claims as they apply to the Board Members of CCDE are dismissed.  Additionally, Plaintiffs may not recover for damages for loss of parental consortium. As such, Plaintiff's only remaining claims exist under Count V and Count VI of the Amended Complaint.


**IT IS SO ORDERED.**


     **s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**


**DATED: March 5, 2007**

21